**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| AMERICAN FAMILY INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | |
| LUISA CRUZ MEZQUITAL, | Case No.: 1:21-CV-02586-RWS |
| Defendant. | |

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

Knowing that it was about to face a civil lawsuit over its role in flagrantly criminal conduct, American Family Insurance Company ("AmFam") filed this suit for declaratory relief with the <u>*express*</u> intent of persuading this Court to preempt the now-pending state court proceedings by ruling on several issues that will before the state court. And to obtain this Court's jurisdiction, AmFam had to omit from this lawsuit many of the parties that have an obvious interest in the outcome of the proceedings. Because procedural fencing is emphatically not an appropriate use of declaratory relief, and because the correct parties are not before it, this Court should decline jurisdiction over this matter. If it does exercise jurisdiction, it should find that AmFam has failed to state a claim upon which relief can be granted.

1

## BACKGROUND

Although the dispute between these parties is longstanding, the Court need not examine much of its history to see why this matter is due to be dismissed. Briefly, on October 21, 2012, Abdulmohsen Almassud's jeep crossed the center line of a road in Forsyth County, striking Luisa Cruz Mezquital's ("Cruz") car. *Abdulmohsen v. Mezquital*, 345 Ga. App. 456, 456 (2018). The result was gruesome injuries to Cruz's dominant hand, for which a jury awarded damages totaling more than $30 million. Almassud, insured by AmFam, appealed, obtaining a new trial on the basis of an omitted jury instruction. *Id.* at 460.

Once back before the trial court, AmFam and attorneys working on the matter stepped up their tactics. Cruz alleges that AmFam and the attorneys elected to engineer an extensive and illegal invasion of her private property to conduct a spying campaign on her home, vehicle, and family, including her minor children. Counsel hired Martinelli Investigations, Inc. to assist in this campaign. Again, the Court need not dive deeply into those allegations at this stage, but two facts are worth noting:

First, one might mistakenly think these allegations concern only minor privacy breaches. AmFam alleges that Martinelli claims its entry onto Cruz's properly was "purely accidental," almost as if to imply Martinelli's employees goofed and stepped one foot over Cruz's property line. DE # 1, at ¶ 24. Doing so

wildly understates the extent of the alleged spying. According to Cruz, Martinelli repeatedly trespassed on her property, placed hidden video and tracking devices far from public view, returned multiple times to switch out memory cards, and putting tracking devices on Cruz's vehicles, including one operated primarily by her minor son. Ex. A at ¶¶ 29-38. Martinelli obtained over 1,500 pictures and videos, including of Cruz's minor children. *Id.* at ¶ 49. These allegations, once proven, would establish that at least Martinelli committed multiple felonies. O.C.G.A. § 16-11-69. These felonies are what AmFam refers to in its complaint as "purely accidental." DE #1, at ¶ 24.

Second, a reader of AmFam's complaint could also be forgiven for assuming that AmFam's sole role in the espionage consisted of permitting its lawyers to sign a retainer agreement. *See* DE #1 at ¶¶ 18-19. But again, Cruz's allegations are quite different, implicating AmFam directly in the misconduct. For example, Cruz alleges that AmFam "hired, retained, paid, directed, instructed, and supervised Defendant Martinelli Investigations in an unlawful investigation and unlawful surveillance of" Cruz. Ex. A at ¶ 24; *see also* ¶ 26 (same). "The AmFam Defendants' directions to the Martinelli Investigations Defendants included the mandate to have the investigators do whatever they needed to do to get surveillance of Plaintiff." *Id.* at 27. Cruz also alleges that AmFam worked with Martinelli "in concert beyond the scope of the contract" and that they "subsequently ratified the criminal and tortious conduct by

3

seeking to use the fruits of the illegal conduct against [Cruz] in her Personal Injury Action." *Id.* at ¶ 28. Among other things, "[d]uring the period of the unlawful surveillance, the AmFam Defendants also requested and received regular updates from the Baker Donelson Defendants on the status of the surveillance, and the AmFam Defendants also provided direction, instruction, and supervision to the Martinelli Investigations Defendants." *Id.* at ¶ 47; *see also* ¶ 48. In short, Cruz alleges AmFam's direct involvement in a criminal scheme, not merely its passive role in hiring a subcontractor.

After learning of this misconduct, Cruz sent AmFam a demand letter, setting out her claims for invasion of privacy and intentional infliction of emotional distress. *See* DE #1, Ex. C. When the sides were unable to resolve their dispute, counsel for Cruz informed AmFam that they would be imminently filing suit in Georgia state court. In response, AmFam filed this lawsuit for declaratory relief, explicitly citing Cruz's forthcoming state court litigation as the reason the matter was ripe for this Court's review:

> Recently, counsel for Mezquital made it be known that Mezquital intends to imminently file a lawsuit to seek damages for her claims of invasion of privacy and intentional infliction of emotional distress. Thus, there is sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

DE #1, at ¶ 50; *see also* ¶ 59 (same); 32-33 ("Shortly before the filing of this Complaint, counsel for Cruz make it be known that she would be imminently filing a lawsuit against AmFam . . . .").

Soon after AmFam filed this action, Cruz did, indeed, file her suit in the State Court of DeKalb County. *See generally* Ex. A. In addition to naming AmFam, Cruz also names Almassud's and AmFam's lawyers, Martinelli Investigations, Inc., and certain employees of Martinelli.

## SUMMARY OF ARGUMENT

1. Declaratory relief is not a matter of right. The Supreme Court has repeatedly and emphatically made clear that district courts not only can, but often should, abstain from hearing claims for declaratory relief. The quintessential case in which a court should decline to offer declaratory relief is where it suspects that the party seeking relief is engaged in "procedural fencing," attempting to run to Federal court to prevent plaintiffs from having their choice of forum. Here, AmFam's own admission that its very purpose in filing this lawsuit was to head off the state action is alone a sufficient basis for dismissing this lawsuit. But the other factors courts consider in determining whether to exercise jurisdiction, such as a desire to avoid piecemeal litigation, also weigh sharply in favor of declining to consider declaratory relief.

2. Even if this Court were nonetheless inclined to hear this case, it cannot do so because the proper parties are not before it. AmFam's claims require this Court to resolve the rights not only of AmFam and Cruz, but of Almassud, of Almassud's Lawyers, of AmFam's lawyers, and of Martinelli and its employees. Yet AmFam did not include any of those parties in this suit for a transparent reason—doing so would deprive this Court of subject matter jurisdiction. Federal Rule of Civil Procedure 19 addresses circumstances just such as these, and dictates dismissing this action due to the infeasible joinder of necessary parties.

3. If this Court were to consider AmFam's claims on the merits, it should find that AmFam has failed to state a claim upon which relief can be granted. Its two claims for declaratory relief fail as a matter of law, its request for injunctive relief is both inadequately pled and requests unconstitutional relief. And its various requests for attorney's fees crosses the border of frivolous allegations.

## ARGUMENT

**I.      This Court should decline to hear this matter based on *Brillhart* abstention.**

> *A.      That this action was an explicit attempt to beat Cruz to court by itself warrants this court declining to provide declaratory relief.*

"It is settled that whether a federal district court will entertain an action for declaratory judgment under 28 U.S.C. § 2201 rests in the sound discretion of the court." *Frito-Lay, Inc. v. Dent*, 373 F. Supp. 771, 773 (N.D. Miss. 1974) (citing *Brillhart*

*v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). In *Brillhart*, the Supreme Court made clear that even where a district court had jurisdiction of a suit under the Federal Declaratory Judgment Act, "it was under no compulsion to exercise that jurisdiction" and often should not do so when claims could be better addressed in state court. *Brillhart*, 316 U.S. at 494.

Unlike other abstention doctrines, under *Brillhart*, there is no presumption that a Federal court exercise its jurisdiction absent exceptional circumstances. Just the opposite: "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* at 495. "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

The Supreme Court declined in *Brillhart* to "attempt a comprehensive enumeration of . . . relevant factors governing the exercise of a District Court's discretion," but made clear that the core role of the District Court is to "ascertain whether the questions in controversy between the parties to the federal suit . . . can

7

better be settled in the proceeding pending in the state court." *Id.* at 495. For that

reason, courts have consistently held that a "suit for declaratory judgment aimed

solely at wresting the choice of forum form the natural plaintiff will normally be

dismissed and the case allowed to proceed in the usual way." *Allendale Mut. Ins. Co.*

*v. Bull Data Sys.*, 10 F.3d 425, 431 (7th Cir. 1993).

The Declaratory Judgment Act "is not intended to give alternative forums so

as to draw federal and state courts into potential conflict, nor to encourage

'procedural fencing.'" *Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963); s*ee, e.g.*

*Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (3d Cir. 1974) ("The object of the statute

is to afford a new form of relief where needed, not to furnish a new choice of

tribunals or to draw into the federal courts the adjudication of causes properly

cognizable by courts of the states."); *Dow Jones,* 346 F.3d at 359 (explaining that

declaratory relief is not an appropriate remedy where it is being used for

"procedural fencing" or a "race to res judicata."); *Nucor Corp. v. Aceros Y Maquilas de*

*Occidente, S.A. de C.V.,* 28 F.3d 572, 579 (7th Cir. 1994) (same).

Such behavior is particularly noxious when employed as a means for a

prospective tort defendant to "obtain a declaration of non-liability, or, failing in

such an endeavor, to force all prospective claimants to submit their claims to the

jurisdiction of the court for final determination." *Frito-Lay,* 373 F. Supp. at 773. "To

compel potential personal injury plaintiffs to litigate their claims at a time and in a

forum chosen by the alleged tortfeasor would be a perversion of the Declaratory Judgment Act." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969); *see also* Wright and Miller, Federal Practice and Procedure § 2765 (1974) ("[T]his result should not outweigh the right of a personal injury plaintiff to choose the forum and the time, if at all, to assert his claim.").

Yet here, AmFam attempts to engage in precisely the form of procedural fencing courts have consistently rejected. Nor is there anything subtle about what AmFam is doing. It candidly admits that the very reason its requested relief is ripe is because Cruz told it she intended to file her state court litigation imminently. *See* DE #1, at ¶ 50. AmFam's admission is enough, standing alone, for this Court to decline jurisdiction over this declaratory action.

B.      *The other* Brilhart *factors likewise strongly support abstention.*

Courts have, in the nearly eighty years since *Brilhart*, identified additional factors to consider in exercising jurisdiction over declaratory judgments. A review of these factors shows that they, too, overwhelmingly support declining to provide declaratory relief here.

Federal courts have identified two appropriate purposes for providing declaratory relief: One permissible purpose is to test the constitutionality of state statutes. *See, e.g. Cleaver v. Wilcox*, 499 F.2d 940, 944 (9th Cir. 1974) ("Congress intended the declaratory judgment procedure . . . to be utilized to test the

constitutionality of state statutes."); *United States v. Dorgan*, 522 F.2d 969, 973 (8th Cir. 1975) ("[T]he Declaratory Judgment Act was created to enable a federal court to determine the constitutionality of a statute without issuing a preliminary injunction. . . ."). A second acceptable purpose is to offer relief where there may be significant accrual of damages as litigants wait for an adversary to begin legal proceedings. *See, e.g. Davis*, 490 F.2d at 543; *Sarafin v. Sears, Roebuck & Co.*, 446 F. Supp. 611, 615 (N.D. Ill. 1978) (explaining that the purpose of declaratory relief is to avoid accrual of damages).

Neither of these two situations apply here. AmFam is not seeking a declaration as to the validity of a state law or action. Nor is there a risk of significant accrual of damages. AmFam seeks avoidance of liability only and requests only declaratory and injunctive relief and attorneys' fees. Nor will AmFam need to wait to obtain a ruling on the relief it seeks; Cruz has already filed her action in state court and AmFam can assert its arguments there.

On the other hand, courts have identified several circumstances in which declaratory relief is not appropriate. One of those is where declaratory relief would not obviate the need for state proceedings, but would instead result in piecemeal litigation. *See, e.g. Davis*, 490 F.2d at 543 ("The statute should not be used to try a case piecemeal."); *Ohio Cas. Ins. Co. v. Farmers Bank of Clay*, 178 F.2d 570, 574-75 (6th Cir. 1949) (explaining that declaratory relief is appropriate where an issue can be

"fully and completely decided," thereby avoiding "a multiplicity of suits."); *Duggins*, 323 F.2d at 748 (explaining that the purpose of the Declaratory Judgment Act is to provide "an immediate forum for the adjudication of rights and obligations in actual controversy where such controversy may be settled in its entirety and with expediency and economy."). Here, declaratory relief would not avoid the need for a state proceeding. The state court action involves multiple parties that AmFam has not chosen to include in this suit. Even if AmFam were to win all of its claims in this suit (which, as shown below, it cannot), doing so would not obviate the need for a parallel state court proceeding on the same nucleus of facts as between the remaining parties. If AmFam wins anything less than complete relief, it also will still need to participate in that action.

Courts have also found declaratory relief inappropriate where the use of a declaratory judgment would increase friction between Federal and state legal systems. *See, e.g. Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). Here, parallel proceedings are likely to produce friction, because adjudicating AmFam's claims will necessarily require this Court to involve itself in the state court litigation. A prime example is AmFam's claims for attorneys' fees, which assert that Cruz has been stubbornly litigious in sending her presuit demand letter in the state action. To vet these claims, this Court will need to directly examine the parties'

conduct in the state action, despite that the state court judge is manifestly better situated to do so.

Finally, declaratory relief ought to be unavailable where "there is an alternative remedy that is better or more effective." *Nucor*, 28 F.3d at 579. Here, one such alternative remedy is readily apparent. An already-pending state court proceeding will resolve all claims arising out of this dispute as to all parties. No additional benefit is triggered by initiating a parallel proceeding in Federal court.

## II. This case must be dismissed for failure to join necessary parties.

The Court also should dismiss this action under Federal Rule of Civil Procedure 19 for failure to join required parties. Here, AmFam's own allegations establish that several people are necessary parties, yet AmFam, in an effort to obtain diversity jurisdiction, has intentionally failed to include them.

### A. *AmFam has failed to join several necessary parties.*

Under Rule 19(a), a person is required to be joined if feasible if either: (1) in that person's absence, the court cannot accord complete relief among the existing parties; or (2) that person claims an interest relating to the subject matter of the action and disposing of it may as a practical matter impair that person's ability to protect that interest or leave and existing party subject to inconsistent obligations. Fed. R. Civ. P. 19(a)(1).

Here, several groups of people have obvious interests in the outcome of this action that will be adversely affected in their absence:

(1)     *Martinelli and its employees:* Cruz's complaint in Dekalb County names Martinelli Investigations, Inc., its principal Robin Lyn Martinelli, and several of its employees. Ex. A at ¶¶ 8-9, 25. AmFam now asks this Court not only to interpret a contract signed by Martinelli, but specifically to interpret the contract as placing any liability for the claims in the state lawsuit *on Martinelli*. DE #1, at ¶ 45 (asking this Court to agree "that the Retainer Agreement establishes, as a matter of law, that Martinelli is an independent contractor, and therefore *only Martinelli could be held liable for its actions*.") (emphasis added). That determination clearly poses a risk to Martinelli and its employees, and neither AmFam nor Cruz has any incentive to protect their legal interests.

*(2)     AmFam's Attorneys and Almassud's Attorneys:* Each of the attorneys in the now-settled automotive claim also claim an interest in this action. As an initial matter, three of the attorneys are named as Defendants in the state court action, alleging that their actions on behalf of AmFam and/or Almassud relating to the illegal surveillance subject them to liability to Cruz. These attorneys share at least as strong an interest as AmFam in obtaining declaratory relief. What is more, at least some of the claims AmFam asserts plainly *belong to the attorneys, not to AmFam*. For example, in AmFam's Count III seeking injunctive relief, AmFam identifies four sets

of actions by Cruz that it alleges constitute "vexatious, harassing, and bad faith conduct." DE # 1 at ¶ 63. Of those four, three involve neither of the parties to this action. Instead, AmFam asserts that Cruz's counsel (not Cruz herself) "repeatedly threatened counsel hired by AmFam with sanctions, publicly impugned counsel hired by AmFam at a public CLE program, filed frivolous complaints with the State Bar of Georgia against counsel hired by AmFam . . . and most recently made a frivolous threat to sue AmFam." *Id.* The correct parties for these claims are Cruz's counsel, AmFam's counsel, and Almassud's counsel, not AmFam or Cruz. Yet AmFam asks this Court to resolve all three sets of counsels' rights in their absence.

*(3)* **Abdulmohsen Almassud:** Almassud, the driver who injured Cruz' hand, also has an interest in this action. While Cruz has chosen not to sue Almassud at this time, Count I of AmFam's complaint asks the Court to interpret the scope of a release covering both AmFam and Almassud. DE #1 at ¶¶ 44-45. A ruling by this Court limiting the scope of the release could be adverse to Almassud. Nor can AmFam claim it will adequately represent Almassud's interests. For one thing, Almassud has additional protections in the release beyond those given AmFam that AmFam has no incentive to safeguard. But an even more fundamental problem is that AmFam is *currently suing Almassud in a separate action in this court*, and cannot possibly be said to share identical legal interests.

        B.      *The failure to join necessary parties requires this Court to apply Rule 19(b).*

There is a simple explanation for why AmFam joined none of the people with a clear interest in the outcome of this litigation: They are Georgia residents, and naming them would have deprived this Court of subject matter jurisdiction. Martinelli and its employees, Almassud's counsel, and Almassud all are equally situated to AmFam as plaintiffs in this declaratory judgment action, because each of them face potential exposure to Cruz. But adding them would destroy complete diversity. Accordingly, joinder is not feasible, and this Court must consider whether to dismiss this action under Rule 19(b). *See Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 85 (4th Cir. 1973) (Explaining that where a person cannot be joined without depriving the court of diversity jurisdiction, the court must apply the factors enumerated in Rule 19(b).

C. *Applying the Rule 19(b) factors warrants dismissal of this action.*

Rule 19(b) identifies four factors to consider in determining whether an action ought be dismissed. Each sharply favor dismissal here.

First, the Court ought to consider the extent to which a judgment rendered in the person's absence might prejudice that person or existing parties. Fed. R. Civ. P. 19(b)(1). Here, Count I asks the Court to interpret the terms of a contract to which Almassud is a signatory in Almassud's absence, and specifically to interpret the scope of the release given to AmFam and Almassud. Almassud has an obvious

interest in ensuring the enforceability of the release. Count II asks the Court to interpret a contract between AmFam and Martinelli, and specifically to find that only Martinelli and its employees can be held liable to Cruz. Martinelli has a clear interest in the interpretation of that contract. Count III of the complaint uses harms allegedly imposed upon AmFam's attorneys and Almassud's attorneys as the basis for an injunction issued for AmFam's benefit. But if any individuals are entitled to that injunction, it is those counsel, not AmFam.

Second, the Court should examine the extent to which any prejudice could be lessened or avoided. Fed. R. Civ. P. 19(b)(2). But it cannot be. Count II provides the clearest example of this problem; neither AmFam nor Cruz can be expected to request an interpretation of the retainer agreement that is in any way favorable to Martinelli. Both parties to the suit as currently constituted will request relief hostile to a non-party's interests, a problem not curable absent Martinelli's joinder.

Third, the Court should consider whether a judgment rendered in the person's absence would be adequate. Fed. R. Civ. P. 19(b)(3). But no judgment can be both adequate and protect the non-parties interests. For example, any ruling on Count II that does not shift blame entirely to Martinelli and its employees will provide no relief to AmFam, because it will do nothing to preclude Cruz's state court relief. It is inevitable either that declaratory relief will not end the dispute or will prejudice a non-party's rights.

Finally, the Court ought to consider whether the plaintiff will have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b)(4). This factor again sharply favors dismissal, because AmFam's complaint consists of defenses and cross-claims it is entitled to assert in the state law action. AmFam already has an appropriate forum to present its arguments.

That this case ought to be dismissed finds further support in the advisory note to Federal Rule of Civil Procedure 57, governing declaratory judgment. There, the drafters noted that for a declaratory action to be warranted, "[t]he petitioner must have a practical interest in the declaration sought and **all parties having an interest therein or adversely affected must be made parties** or be cited." Fed. R. Civ. P. 57 Advisory Note (emphasis added).

## III. AmFam's complaint fails to state a claim.

> ### A. *Count I is due to be dismissed because it is belied by the plain language of the relevant release.*

Count I seeks declaratory relief on the theory that the parties executed a release in conjunction with settling the tort action, and that release bars a claim for invasion of privacy. The Court should dismiss this count because it is inconsistent with the plain language of the contract.

That contract, attached to the complaint as Exhibit B, releases AmFam and Almassud only from "claims, demands, and damages which have resulted or may

17

in the future develop **from injuries sustained on or about the 21st day of October 2012** at or near the intersection of Dahlonega Street and Pilgrim Road." De #1, at Ex. B (emphasis added). The obvious import of this language is that the release covers the injuries Cruz suffered from being struck by Almassud in 2012.

Yet in a sequence of logic that would make Helen Palsgraf herself blush, AmFam reasons that Cruz would not have sued Almassud but for the collision on October 2012, and if Cruz had never sued Almassud, AmFam, its lawyers, Martinelli, and its employees would not have engaged in an elaborate effort seven years later to criminally invade Cruz and her children's privacy. Therefore, AmFam posits, the felonious conduct "develop[ed] from injuries sustained on or about the 21st day of October 2012." That position is, in a word, nonsense.

Cruz's injuries for invasion of privacy occurred between September and October 2019, when AmFam and the other state court defendants chose to trespass on her land and plant surveillance devices to illegally record her and her children's activities. That AmFam might have chosen a different path had Cruz never sued its insured does not mean that the privacy invasion resulted from injuries sustained in October 2012. It arose from an independent criminal act AmFam paid Martinelli to undertake seven years later. By AmFam's logic, even if AmFam had ordered Cruz's murder, her death would be an injury that "develop[ed] from injuries sustained" during the collision, so long as AmFam's motive was to shut her up. Likewise,

AmFam could just as easily argue that a release from "injuries sustained during Cruz's birth" also would immunize AmFam from its subsequent surveillance, because if Cruz had never been born, AmFam could not have spied on her. AmFam's reading of the contract quickly becomes ridiculous.

Even if the meaning of the relevant clause were not clear on its own, its import is made even more apparent by context. As AmFam itself points out, the document includes a second release only as to Almassud that reads in full:

> Furthermore, Luisa Cruz Mezquital releases and forever discharges Abdulmohsen Y. Almassud from any and all claims, demands, and damages of any kind or nature whatsoever that the Undersigned ever had arising from or related to *Luida Cruz Mezquital v. Abdulmohsen Y. Almassued et al.*, Civil Action No. 14-EV-001930F, Fulton County State Court, Georgia.

DE # 1, Ex. B. This release, unlike the one AmFam relies upon, does by its plain language cover claims in any way "related to" the tort suit, instead of only those related to the injuries Cruz suffered on October 2021. And its presence in the contract proves two critical things:

First, the parties to the release were entirely aware of how to draft a clause that would cover claims not directly related to Cruz's physical injuries. If Cruz and AmFam had intended to release AmFam from every claim related to the tort lawsuit, both sides were well aware how to draft such a clause. Where parties represented by counsel know how to say what they mean, the meaning of that

contract is a question of law rather than fact, and ought be enforced as written. *See Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952, 955 (7th Cir. 2006) ("Especially when dealing with a substantial contract between commercially sophisticated parties who know how to say what they mean and have an incentive to draft their agreement carefully, there is great merit to the rule that the meaning of an unambiguous contract is a question of law rather than of fact, with the consequence that unambiguous contractual language must be enforced as written.") (internal citations omitted).

Second, if the waiver upon which AmFam now relies meant what AmFam claims it does, there would have been no reason to have included a second waiver specific to Almassud. AmFam's reading of the first waiver renders the second entirely superfluous. Almassud was already included in the first waiver, and had no need for the second unless it covers a broader subject matter than the first. This Court ought not adopt a reading that renders the second waiver superfluous. *See Commercial Bank & Trust Co. v. Anderson*, 197 Ga. App. 901, 907 (1990) ("This court is obligated, when construing contracts, to favor the construction which gives meaning and effect to *all* of the terms of the contract over the construction which nullifies or renders meaningless a part of the language therein.") (emphasis in original).

Because the Court can determine the meaning of the release from an examination of the contract alone, there is no need for discovery into the intent of the parties. *See Crabapple Lake Parc Cmty. Ass'n v. Circeo*, 325 Ga. App. 101, 105 (2013). This Court should dismiss Count I for failure to state a claim.

B. *Count II should be dismissed because interpreting the language of the retainer agreement cannot by itself resolve AmFam's liability.*

In Count II, AmFam asks this Court to find that Cruz's claims against AmFam are barred by the independent contractor doctrine because the Retainer Agreement states that Martinelli is an independent contractor. DE #1, at ¶ 60. This position is a non-sequitur. Even assuming the terms of a bilateral retainer agreement between AmFam and Martinelli were binding on Cruz (they are not), there are numerous ways AmFam could remain liable.

To begin with, Cruz alleges in the state action that AmFam participated directly in the misconduct and worked with Martinelli "in concert beyond the scope of the contract." Ex A at ¶ 18. The independent contractor doctrine does not bar a claim that AmFam itself engaged in tortious conduct. Moreover, Georgia has set out by statute circumstances in which an employer is liable for the negligence of a contractor, and Cruz has alleged in the state law action that several of those exceptions are applicable here. *See* O.C.G.A. § 51-2-5. For example, Cruz alleges that AmFam "hired, retained, paid, directed, instructed, and supervised Defendant

Martinelli Investigations in an unlawful investigation and unlawful surveillance of" Cruz, Ex. A at ¶ 24; *see also* ¶¶ 26, 47-48, and that instruction "included the mandate to have the investigators do whatever they needed to do to get surveillance of Plaintiff." *Id.* at 27. Cruz also alleges that AmFam "subsequently ratified the criminal and tortious conduct," *id.* at ¶ 28. Each of these allegations, if proven during discovery in the state action, would establish liability under O.C.G.A. § 51-2-5.

The result is that AmFam's request for declaratory relief must fail, because it is not entitled to the relief it seeks. This Court cannot declare from the face of the contract that Cruz's claims are barred by the independent contractor doctrine. Put another way, AmFam's request for declaratory relief is non-justiciable, because it fails the redressability prong of the Article III standing inquiry. To obtain standing, AmFam "must demonstrate that their alleged inquiry will be redressed by a favorable decision." *Fla. Wildlife Fed'n., Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1304 (2011). But here, a ruling that the retainer agreement demonstrates Martinelli to be an independent contractor would not preclude Cruz from pursuing its claims as pled in the state court complaint. *Id.* at 1304-05 ("Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury

suffered."). This Court should dismiss Count II either because it fails to state claim or is non-jusiticiable.

> C.  *Count III's request for injunctive relief states no underlying claim (and if it did, the requested relief would be unconstitutional).*

AmFam asks this Court in Count III to issue a preliminary injunction preventing Cruz and her counsel "from continuing . . . vexatious, harassing, and bad faith conduct." DE #1, at ¶ 64. This claim fails because it is no claim at all, but instead a freestanding request for injunctive relief. As this Court is aware, to obtain a preliminary injunction, AmFam must prove that its claim has "a substantial likelihood of success on the merits." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). But AmFam cannot possibly do so here, because its cursory four paragraph claim (one paragraph of which simply incorporates the complaint by reference) never even purports to identify a cause of action.

To the extent a cause of action is implied, it is apparently defamation. A single paragraph identifies counsel for Cruz's purported bad behavior, which includes threating counsel with sanctions, insulting them at a CLE conference, and filing a bar complaint. DE # 1, at 63. But if AmFam intended to state a claim for defamation, it has utterly failed. Under Georgia law, a defamation claim contains four elements, and AmFam has alleged zero of them:

> To establish a cause of action for defamation, a plaintiff must submit evidence of (1) a false and defamatory statement about himself; (2) an

unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words "injurious on their face."

*RCO Legal, P.S.., Inc. v. Johnson*, 347 Ga. App. 661, 668 (2018). Nowhere in AmFam's complaint does it allege that Cruz's counsel made a false statement, or even one directed at AmFam. To the contrary, three of the four purported statements were directed at counsel, who are not plaintiffs to this action. The only example AmFam presents of a communication arguably about AmFam is the service of a demand letter, an act which is both privileged under Georgia law, *see* O.C.G.A. § 51-5-7, and not made to a third party. and not made to a third party. Nor does AmFam allege fault, special damages, or defamatory words "injurious on their face."

What is more, even if AmFam could state a claim for defamation, that claim would not entitle it to injunctive relief. It is questionable whether the First Amendment ever permits a preliminary injunction in a defamation action. *See McCarthy v. Fuller*, 810 F.3d 456, 460-63 (7th Cir. 2015). But even if does, that injunction would need to be narrowly-tailored and could not prohibit unspecified "vexatious, harassing, and bad faith conduct." *Id.*; *see* DE #1, at ¶ 64.

D.     *AmFam's various requests for fees are frivolous.*

AmFam's remaining claims involve a shotgun attempt to assert its entitlement to attorneys' fees by citing to every Georgia fee statute that mentions bad faith. Each of these claims have their own defects, but they also all fail for the same reason:

Every statutes AmFam invokes contemplate seeking fees *in the same underlying action in which the bad faith conduct occurred*. In all three claims, AmFam asserts that Cruz's decision to send a demand letter in advance of filing her state court action constitutes bad faith. If AmFam were right, those claims belong in the state court action that was the subject of the demand. AmFam has no basis for seeking fees in this declaratory judgment action, because Cruz has not engaged in bad faith in this action. Quite literally all Cruz has done in this action is file this motion to dismiss.

The counts also each fail for reasons particular to the statutory provision cited. For example, AmFam's claim in Count IV under O.C.G.A. § 9-11-68(e) is outright frivolous, because that provision states that a claim for fees is to be made only "[u]pon motion by the prevailing party at the time that the verdict or judgment is rendered," not by complaint at the initiation of an action. Meanwhile, O.C.G.A. § 9-15-14(b) does not apply to demand letters. By its plain language, it covers only claims actually "brought," and then is to be addressed by the tribunal in which that claim is pending. And O.C.G.A. § 13-6-11 is a remedy available only to plaintiffs who are forced to resort to litigation, not to defendants. *Vogtle v. Coleman*, 259 Ga. 115 (1989). It would pervert the purpose of that provision to allow fees in a declaratory action, where the putative plaintiff is in fact a recalcitrant defendant.

## CONCLUSION

This Court should dismiss AmFam's complaint.

Respectfully Submitted this 21st Day of July, 2021.

/s/ Kurt G. Kastorf
Kurt G. Kastorf
Georgia Bar No. 315315

KASTORF LAW, LLC
1387 Iverson Street NE
Suite 100
Atlanta, GA 30307
(404) 900-0330
kurt@kastorflaw.com

**Counsel for Luisa Cruz Mezquital**

## CERTIFICATE OF COMPLIANCE

I hereby certify that the above memorandum was prepared using Book Antiqua 13, does not exceed 25 pages, and otherwise complies with the type and format requirements of Local Rules 5.1(C) and 7.1(D).

This 21st Day of July, 2021.

/s/ Kurt G. Kastorf
Kurt G. Kastorf
Georgia Bar No. 315315

KASTORF LAW, LLC
1387 Iverson Street NE
Suite 100
Atlanta, GA 30307
(404) 900-0330
kurt@kastorflaw.com

**Counsel for Luisa Cruz Mezquital**

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing notice upon all parties by filing it via CM/ECF.

This 21st Day of July, 2021.

/s/ Kurt G. Kastorf
Kurt G. Kastorf
Georgia Bar No. 315315

KASTORF LAW, LLC
1387 Iverson Street NE
Suite 100
Atlanta, GA 30307
(404) 900-0330
kurt@kastorflaw.com

**Counsel for Luisa Cruz Mezquital**